PARKER PAINE *vs.* JOHN L. STEWART.

Where a general banking law of a state imposed upon the stockholders of banks which should be organized under it, *individual liability* to double the amount of their stock, while they continued stockholders and one year thereafter, and P, a creditor of the bank, made demand of S, a stockholder, for the payment of his debt, the bank being insolvent, and S requested delay, promising not to transfer his stock, but did secretly and fraudulently transfer it,—held, in a suit brought more than one year after such transfer, that it was inoperative against P.

Where a general banking law contained a provision in the following words:— "Contracts made by any bank or banking association established under the provisions of this act, and all notes and bills issued and put in circulation as money, shall be signed by the president and cashier thereof;" and P purchased of the bank a draft which was signed by the president only, and was dishonored; it was held that the contracts referred to in the act were contracts intended to circulate as money only, and that the bank was liable on the draft.

Where a general statute, under which a corporation is organized, imposes a liability upon the stockholders in their individual capacity in general terms, and in proportion to the amount of their stock, such liability is distinct from the corporate liability, and is of the same character as that incurred by an association of individuals where there is no corporate existence; and, although upon principle they should be subject to suit as in other cases of associate liability, yet as such liability is *peculiar*, because *unequal* and *limited*, and a joint judgment against all is impossible, their liability must be treated as several, *ex necessitate rei*, and they must be sued severally.

Where in a general law, under which a bank was organized, it was provided that the bill-holders of the bank should be entitled to a priority of payment, it was held that that fact *alone* could not avail an individual stockholder, made individually liable for the debts of the bank, in a suit against him founded on such liability, by a creditor of the bank.

Where it was provided in such a law, that the property of an individual stockholder should not be *levied upon* for the payment of a corporate debt while corporate property could be found with which to satisfy it, it was held that evidence that the property of the bank had gone into the hands of a receiver was sufficient proof that corporate property could not be found for that purpose.

ACTION against the defendant as a stockholder of the Bank of St. Paul in the state of Minnesota, to recover the amount of a debt due from the bank, which had become insolvent, by force of the statute of that state, which makes all stockholders of banks organized under the general banking law of the state liable for the debts of the bank, while they are stockholders and for one year thereafter, to double the amount of their stock. The suit was brought to the superior court for Fairfield county, and tried to the jury upon the general issue, before *Dutton, J.*

The declaration alleged that on the 8th day of June, 1861, the Bank of St. Paul, a banking corporation, organized at the city of St. Paul in the state of Minnesota, under a certain statute law of that state, entitled " an act to authorize and regulate the business of banking," with power, among other things, to draw, accept and endorse drafts and bills of exchange, made their certain bill of exchange of that date addressed to Ketchum & Sons of the city of New York, requesting said Ketchum & Sons to pay to the order of the plaintiff two hundred dollars, and then delivered said bill to the plaintiff; that the plaintiff afterwards, at said New York city, on the 13th day of June, 1861, caused said bill to be presented to said Ketchum & Sons for payment, but they then and there wholly neglected and refused to pay the same, and said bill of exchange was afterwards, to wit, on the day and year last aforesaid, duly protested for non-payment thereof, according to the usage of merchants ; of all which said bank, afterwards, on the day and year last aforesaid, had notice ; whereupon and by force of the statute in such case provided, and by the custom of merchants, said bank became and was liable

to pay to the plaintiff the sum of money in said bill specified, and also the fees of the notary protesting the same, amounting to the further sum of one dollar; and by a statute law of said state of Minnesota the said bank became and was liable, upon the non-payment and protest of said bill as aforesaid, to pay to the plaintiff five per cent. upon the sum therein specified, amounting to the further sum of ten dollars; and the said bank was, by reason of the premises, indebted to the plaintiff in the several sums above specified, amounting in the whole to the sum of two hundred and eleven dollars. And the plaintiff says that said bank has never paid the same nor any part thereof, though often requested and demanded, and that said bank was at the time of the non-payment of said bill by said Ketchum & Sons as aforesaid, and at the time when the same was protested as aforesaid, wholly insolvent, and has ever since continued so to be. And the plaintiff says that, at the time when said bill was drawn by said bank as aforesaid, and at the time when the same was presented for payment and protested for non-payment as aforesaid, the defendant was, and has ever since continued to be, and now is, a stockholder of said bank to the amount of five hundred dollars of the stock of said bank; that by the statute laws of said state of Minnesota, in force when said bill was drawn and protested as aforesaid, and still unrepealed, the defendant is liable in an amount equal to double the amount of stock owned by him for all the debts of said bank, and is liable to pay the plaintiff the amount specified in said last mentioned bill, and said sum of ten dollars and one dollar in addition thereto as aforesaid; whereby a right of action has accrued to the plaintiff to demand and recover from the defendant said last mentioned sum of two hundred and eleven dollars; yet the defendant has never paid the same, though often requested and demanded, and particularly notified of the failure of said bank to pay the same, and requested to pay the same, at said Bridgeport, on or about the 1st day of May, 1862; all of which is to the damage of the plaintiff the sum of three hundred dollars, &c.

On the trial the plaintiff read in evidence a statute law of

the state of Minnesota, entitled "An act to authorize and regulate the business of banking."* The plaintiff proved that the Bank of St. Paul was organized and went into operation under this statute in the year 1858, with a president, cashier and other officers, and so continued in operation until the 21st day of June, 1861, when, in consequence of having failed to comply with the provisions of the statute, it ceased to carry on business, and soon thereafter its assets went into the hands of a receiver duly appointed therefor. He then offered evidence to prove that on the 8th day of June, 1861, he purchased of the bank, through the president thereof, a draft drawn by the bank on Ketchum & Sons of the city of New York, for the sum of $200, payable to the order of the plaintiff. The plaintiff offered in evidence the original draft, which was signed by the president only, and not by the cashier of the bank, accompanied by evidence to prove that it had been, and was at the time of the making of the draft, the custom of the bank to sell and issue similar drafts in the same manner, signed by the president only. The defendant objected to the admission of the draft, and the evidence

---

* The statute of Minnesota, here referred to, after providing for the organizing of banks under it, contains the following additional sections, pertinent to the present case. It is to be found in the Compilation of 1859, page 858.

" Sec. 19. Contracts made by any bank or banking association established under the provisions of this act, and all notes and bills issued and put in circulation as money, shall be signed by the president and cashier thereof.

" Sec. 21. The stockholders in each bank shall be individually liable in amount equal to double the amount of stock owned by them for all the debts of such bank, and such individual liability shall continue for one year after any transfer or sale of stock by any stockholder or stockholders.

" Sec. 22. In the event of the insolvency of any bank established under the provisions of this act, the bill-holders thereof shall be entitled to preference in payment over all other creditors of such bank."

The 24th section of the act concerning Corporations, page 332 of the same volume, is as follows :—

" Sec. 24. In none of the cases contemplated in this chapter can the private property of stockholders be levied upon for the payment of corporate debts while corporate property can be found with which to satisfy the same, but it will be sufficient proof that no property can be found if an execution has issued on a judgment against the corporation and a demand made of some one of the last acting officers of the body for property on which to levy if he neglects to point out any such property."

accompanying the same, but the court overruled the objection and the same went to the jury. The plaintiff also offered evidence to prove that he endorsed the draft and duly caused it to be presented for payment to Ketchum & Sons in the city of New York, who refused to pay the same, when it was duly protested for non-payment, and notice of such protest duly given to the bank, and that the bank had never paid the same. The plaintiff did not produce any evidence to prove that any judgment on the draft or for the money mentioned therein had ever been obtained, or that any action on the draft or for the money had ever been brought against the bank, or that any effort had ever been made to collect the money of the bank, except that the plaintiff had called on the bank for payment of the draft, but the same had never been paid.

The plaintiff offered evidence to prove that the defendant, with many other persons, including George B. Waller and George Sterling of Bridgeport, in this state, were before and at the time-when the draft was given, stockholders of the bank, and that the defendant continued such stockholder up to a period less than a year before this suit was commenced. The defendant claimed and offered evidence to prove, that on the 17th day of June, 1861, more than a year before the suit was commenced, all his stock in the bank had been transferred on the books of the bank to the president of the bank. The plaintiff claimed and offered evidence to prove, that the transfer was not *bona fide*, and was made without consideration by the defendant, with the intent to defeat the creditors of the bank. And the plaintiff further offered evidence to prove that one of his attorneys in the present suit, in the month of November, 1861, received from him the draft for collection of the defendant and said Waller and Sterling or some of them; that the attorney, then ignorant of any transfer of the stock by the defendant, presented the draft to him for payment; that the defendant requested him to delay bringing suit until he, the defendant, could obtain more information in relation to the matter, and the attorney expressing apprehension that by such delay the plaintiff might lose

some rights which he then had against the defendant, and suggesting that the latter might transfer his stock, the defendant promised him that he would not transfer his stock, and that the plaintiff should lose none of his rights against him by reason of the delay; and that the plaintiff, by his attorney, relying upon this promise of the defendant, deferred bringing suit, and did not commence the same until after the expiration of a year from the time of the alleged transfer, both the plaintiff and his attorney remaining ignorant that any transfer was claimed to have been made until after the commencement of the suit. The plaintiff claimed that the defendant was upon these facts estopped from making the objection that the action was not brought until after the lapse of one year from the time of the alleged transfer. These facts, claimed by the plaintiff, the defendant denied, and claimed that if they were true he was not estopped thereby, and that he was no longer liable, after the lapse of the year, for any debts of the bank, and requested the court so to charge the jury. But the court did not so charge the jury.

The defendant claimed that he was not and never was liable for the payment of the draft or for the money given for it, because the draft was not signed by the cashier of the bank; and further, that if such had been, as claimed by the plaintiff, the custom of the bank, he was not by reason thereof so liable, and requested the court so to charge the jury. But the court did not so charge the jury.

The defendant further claimed that this action, brought as it was by only one creditor of the bank against him alone, could not be sustained; that a suit against all the stockholders of the bank who were liable under the statute for its debts, by the plaintiff, or by the receiver, making all the creditors of the bank parties, or some other appropriate proceeding, was the only remedy that could be sustained, and requested the court to so charge the jury. But the court did not so charge the jury.

The defendant further claimed that, without evidence of a judgment recovered against the bank upon the draft, and an attempt by execution thereon to collect the same, or other

evidence of effort to collect the money from the bank, there could be no recovery in this action against him, and read in support of the claim section 24th of the act of the state of Minnesota concerning corporations, and requested the court to so charge the jury. But the court did not so charge the jury.

The plaintiff objected to both these claims of the defendant on the further ground that they could not be made under the plea of the general issue.

The jury having rendered a verdict for the plaintiff, the defendant moved for a new trial, and also by a motion in error brought the record before this court for revision.

*Loomis* and *D. F. Hollister,* in support of the motions.

1. The bill of exchange offered in evidence is void for the want of the signature of the cashier of the bank. The statute of Minnesota, authorising and regulating the business of banking, provides that " all contracts" made by any bank " shall be signed by the president and cashier thereof." Laws of Minnesota, ed. 1859, p. 858, § 19. This is a public act ; and this provision is intended not only for the security of the stockholders, but of the public also, and cannot be dispensed with.

2. No custom or usage of the bank can abrogate or counteract this important requirement, or give vitality to this unauthorized act of the president of the bank. Such a doctrine would be in direct conflict with the principle that the law of the state creates and regulates the powers given and to be exercised. A custom or usage, to be effective, must not be inconsistent with law, and cannot be received to contravene any positive requirement of law, or any principle of public policy. *Beckwith* v. *Farnum,* 5 R. I. 230 ; *Lee* v. *Kilburn,* 3 Gray, 594; *Foley* v. *Mason,* 6 Maryl., 37 ; *Foye* v. *Leighton* 2 Foster, 71 ; *Inglebright* v. *Hammond,* 19 Ohio, 337. The legislature of Minnesota has absolutely marked the limit of the powers of the bank to make contracts, and they cannot exceed it. If they could, then there are no restrictions or limitations on the banks ; they may do anything they please.

The exercise of a power would be the creation of a power, which would be dangerous as well as absurd. When a law secures a privilege to a person, he may waive it by custom or usage ; but when the privilege embraces others, he cannot without their consent. The public have an interest in the security which this law affords the citizen, and, therefore, cannot be presumed to waive it by any custom or usage that may be adopted inconsistent with the law.

3.   The bank is not estopped from denying the validity of this bill. The president has no power to make and sign contracts alone. How can he be estopped from claiming that he has not done what he has no power to do ? Much less the stockholders. *Hood* v. *New York & New Haven R. R. Co.* 22 Conn., 502.

4.   This suit cannot be maintained by the plaintiff. The act of Minnesota provides that the stockholders shall be individually liable to double the amount of their stock " for *all the debts of the bank,*" and that " such liabilities shall continue for one year after any sale and transfer thereof." Laws of Minnesota, ed. 1859, p. 859, § 21. This necessarily creates a liability in favor of *all* the creditors of the bank, which can be enforced only by the bank, or by those who represent it. To adopt any other rule would lead to great confusion, injustice and fraud. 1st. One stockholder is not liable to pay *one* debt, but his proportion of *all* the debts. He is not responsible to *one*, but to *all* his creditors. 2d. It would be a harsh and unreasonable construction to hold each stockholder subject to suits at the hands of every creditor of the bank, and in every state in the union where he or his property might happen to be. 3d. It would lead to conflicts of jurisdiction, and subject the party to multiplicity of suits, and great embarrassments in the defence of them, in violation of the clearest principles of public policy and public justice. 4th. It would enable a creditor to collect his debt over and over again out of as many stockholders as he could find scattered in the different parts of the country, who could have no knowledge or means of ascertaining whether he had obtained previous satisfaction of others in other states. 5th. Who is to pay the bill-holders ? Is every bill-holder to be left to get

his pay as he can ?   It is clearly the duty of the receiver to gather the assets and pay them ; and all other indebtedness. We insist, then, if any liability exists in a court of law, that it must be at the suit of all the creditors, or of the receiver, who may represent them, against all the shareholders, or against each for his proportional liability.

5.   This suit cannot be maintained because it does not appear that the bank is insolvent, or unable to pay all its debts in full.   The object of making the stockholders individually liable was to secure the payment of all the debts of the bank in case the bank should fail to pay.   The stockholder is not primarily liable.   He stands in the nature of a surety, and is liable to pay only when all legal proceedings against the bank have been exhausted.   In the case of *Southmayd* v. *Russ*, 3 Conn., 56, the court say that the obligation on the stockholders would be conditional but for the words " at all times." Nothing of this kind is in the Minnesota law.   *Middletown Bank* v. *Magill*, 5 Conn. 64.

. 6.   The defendant is not liable in this case, for there is no adjusted and determined indebtedness against the bank shown. It would be a most unreasonable construction that every stockholder should be bound to pay claims presented to him without investigation.   Still more unreasonable to compel him to litigate all questionable or doubtful claims at his own expense.

7.   By the laws of Minnesota, in case of the insolvency of any bank, " the bill-holders shall be entitled to preference in payment over all other creditors of such bank."   How then can it be determined, until the bill-holders are satisfied, that any, and if any, how much, is collectible out of the stockholders to cover their proportion of liability to the creditors of the bank other than the bill-holders ?   For aught that appears in this case every dollar which the stockholders are liable to pay under the provisions of this law may be required to pay the bill-holders.

8.   From the above it is evident that this action cannot be maintained ; that the only proper form of remedy is by ascertaining first the amount of all the outstanding bills of the

bank, and all the other legal indebtedness of the bank, and then to apportion the individual liability of each stockholder, and collect the same in the name of the bank or receiver, or by proceedings in chancery, where the rights of all the parties can be properly secured and protected. *Middletown Bank* v. *Magill*, 5 Conn., 47, 48.

9. The plaintiff is barred of a recovery, because more than a year had elapsed after the transfer of his stock before the suit was commenced. This is an important provision to secure the early liquidation and settlement of the affairs of the bank, and cannot be waived by the defendant.

10. The defense that this suit cannot be maintained by the plaintiff alone, and in no event until there has been an adjudication or determination of the indebtedness of the bank, is admissible under the general issue. The general rule is, that any matter of defense which denies what the plaintiff is bound to prove, in the first instance, in support of his action, may and ought to be given in evidence under the general issue. 1 Swift's Dig., 614. Every act which shows there never was a cause of action, every incapacity which renders a contract a nullity, and everything which proves that there was no right or debt when the action was commenced, may be given in evidence under the general issue. Id. By our statute " the defendant shall not give in evidence any matter of avoidance, or any defense consistent with the truth of the material allegations in his declarations, without notice." Now each of the defendant's claims is entirely inconsistent with the truth of the material allegations in the declaration.

*Ferry* and *Seeley*, contra.

1. The words in the act, " contracts made by any bank or banking association established under the provisions of this act, and all notes and bills issued and put in circulation as money shall be signed by the president and cashier thereof," apply only to such contracts and bills as are intended for circulation as currency. *Kilgore* v. *Bulkley*, 14 Conn., 362 ; *Safford* v. *Wyckoff*, 4 Hill, 442, 456. They are not to be construed as prohibiting the bank from conferring the power to

execute contracts upon either of its officers or appointing other agents to execute contracts in its behalf. *Barnes* v. *Ontario Bank*, 19 N. York, 152.

2. Banks authorized by statute or act of incorporation to contract in a particular way, may by a course of practice render themselves liable on instruments executed in a different mode. *Bulkley* v. *Derby Fishing Co.*, 2 Conn., 252; *Witte* v. *Derby Fishing Co.*, id., 260, and cases cited above.

3. The transfer by the defendant of his stock with the purpose and intent to defeat the then creditors of the bank was void as to the plaintiff, and the defendant remained liable to the plaintiff as though no transfer had been made. *Middletown Bank* v. *Magill*, 5 Conn., 28, 70; *Marcy* v. *Clark*, 17 Mass., 330; *Moss* v. *Oakley*, 2 Hill, 265, 270.

4. The defendant was estopped by his conduct from claiming that he had transferred his stock more than one year previous to the bringing of the suit. *Gaylord* v. *Van Loan*, 15 Wend., 308; *Kinney* v. *Farnsworth*, 17 Conn., 355; *Roe* v. *Jerome*, 18 id., 138; *Cowles* v. *Bacon*, 21 id., 451; *Dezell* v. *Odell*, 3 Hill, 215; *Plumb* v. *Cataraugus County Mut. Ins. Co.*, 18 N. York, 392.

5. The stockholders under this act are in legal effect partners, and the defendant's liability commenced as soon as the debt was contracted. *Corning* v. *McCullough*, 1 Comst., 47, 55; *Allen* v. *Sewall*, 2 Wend., 327; *Moss* v. *Oakley*, 2 Hill, 265, 269; *Southmayd* v. *Russ*, 3 Conn., 52; *Deming* v. *Bull*, 10 id., 409, 415. And allowing that the stockholders were partners, and properly should *all* have been joined, yet the nonjoinder can only be pleaded in abatement. 1 Chitty Pl., 46; *Allen* v. *Sewall*, 2 Wend., 327, 338; *Sewall* v. *Allen*, 6 id., 335, 348, 357. But the suit was properly brought against one of the stockholders alone. *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend., 473.

6. This action is the proper one, and no other action or proceeding was necessary. *Middletown Bank* v. *Russ*, 3 Conn., 135; *Deming* v. *Bull*, 10 id., 409, 416; opinion of Judge Hosmer in *Middletown Bank* v. *Magill*, 5 Conn., 59, 60; *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend., 473.

7. No evidence of any judgment against the bank, or any attempt to collect the debt by execution or otherwise, was necessary to a recovery in this action. See opinion of Judge Hosmer above cited; *Deming* v. *Bull,* 10 Conn., 409, 415; *Bank of Poughkeepsie* v. *Ibbotson,* 24 Wend., 473.

8. The declaration contains sufficient allegations to entitle the plaintiff to recover. The omission to set out in the declaration in *totitem verbis* the sections of the statute of Minnesota making the defendant liable, is cured by the verdict. 1 Chitty Pl., 673 ; *Ward* v. *Bartholomew,* 6 Pick., 409; *Worster* v. *Proprietors of Canal Bridge,* 16 id., 541; *Richards* v. *Farnham,* 13 id., 451 ; *Dale* v. *Dean,* 16 Conn., 579.

BUTLER, J. We are all satisfied that the rulings of the court below in this case were correct, and that the verdict should stand.

It appears from the motion to have been conceded or found by the verdict, that the plaintiff purchased from the bank of St. Paul, which was organized under the laws of Minnesota, a draft upon Ketchum ·& Sons, of the city of New York, which was dishonored, and which if properly executed constituted a valid claim against the bank. By the laws of Minnesota the stockholders of the bank were liable individually for the debts of the bank, to an amount equal to double the amount of stock owned by them respectively. At the time the draft was purchased the defendant was a stockholder in the bank to the amount of five hundred dollars. The plaintiff after said draft was protested (the bank having become insolvent,) demanded payment of the defendant as a stockholder, so liable individually ; and the defendant requested delay, promising not to transfer his stock. It further appears that the individual liability aforesaid continued by law for twelve months after a transfer of the stock and no longer. The defendant, after requesting delay and promising not to transfer his stock, did transfer it fraudulently and without consideration, and more than one year elapsed after such transfer before suit was commenced. It also appears that the laws of Minnesota which authorized the organization

of the bank contained a provision in the following words, namely, " Contracts made by any bank or banking association established under the provisions of this act, and all notes and bills issued and put in circulation as money, shall be signed by the president and cashier thereof." It did not appear that the plaintiff had taken any steps to recover the amount paid for said draft except to request payment of the bank, and it did appear that there were other stockholders of said bank living in this state. On this state of facts the defendant claimed, in the first place, that he was not liable because the suit was not brought within one year after a transfer of the stock, and requested the court so to charge the jury ; but the court did not so charge.

In that the court was right. The delay in commencing the suit was directly induced by the promise of the defendant that he would not transfer his stock and deprive the plaintiff of the rights which he then had to institute the suit. Under such circumstances the transfer was wrongful and fraudulent, and as against the plaintiff inoperative. *Middletown Bank* v. *Magill*, 5 Conn., 70.

The defendant further claimed that he was not liable for the payment of said draft, or the monies mentioned therein, because it was not signed by the cashier of said bank as required by law, and that no different usage could lawfully exist; and requested the court so to charge the jury. The court did not so charge, and in that we are satisfied there was no error.

The clause in the statute of Minnesota upon which the claim of the defendant was based, does not appear to have received a judicial construction in that state ; but it is obviously copied from the general banking law of New York, and, as contained in the latter, has received a judicial construction by the courts of New York, and also in this court. In *Safford* v. *Wyckoff*, 4 Hill, 442, it was determined in the Court of Errors that the requirement extended only to paper intended to circulate as money, and that a draft signed by the cashier only (the purchase money of which came to the possession and use of the bank,) constituted a valid claim

against the bank.   And see also *Barnes* v. *Ontario Bank*, 19 N. York, 152.   The same construction was given to the clause by this court in *Kilgore* v. *Buckley*, 14 Conn., 362. The court below correctly conformed to those decisions.

The defendant claimed, in the third place, that if the draft was valid, the action could not be sustained against him alone.

It must be conceded that such an action is in some respects anomalous, but we think it must be sustained.   The act of Minnesota, which authorized the organization of the bank, constituted it a corporation, and gave the stockholders corporate powers, and imposed upon them corporate liabilities, but it also imposed upon them individual liability to a limited amount and in general terms.   These obligations were independent and both absolute.   In some of the states the legislature, when imposing such individual liability upon members of corporations, have prescribed conditions and contingencies upon which it should take effect.   The legislature of Minnesota did not do so.   By the 24th section of the law they provided that the private property of stockholders should not be *levied upon* for the payment of corporate debts, while corporate property could be found with which to satisfy the same, and made a return of " *nulla bona* " on execution a sufficient proof that corporate property could not be found.   But in that they did not say that the liability should not *accrue* until the corporation became insolvent.   They simply restrained the right to enforce it *by levy* of execution so long as there was corporate property which could be levied upon.

The liabilities then are independent and coexistent and the individual liability does not spring into existence upon the insolvency of the company.   It is operative upon the stockholders while such, and for one year after they cease to be such, substantially as if no corporation existed legally and the debts had been contracted on their behalf as an association of individuals.   Such has been the view taken of similar provisions in corporate charters in this state.   *Southmayd* v. *Russ*, 3 Conn., 52 ; *Middletown Bank* v. *Magill*, 5 id., 28 ; *Dem-*

*ing* v. *Bull,* 10 id., 409 ; and see *Corning* v. *McCullough,* 1 Comst., 47.

. The inconveniences attending such a condition·of things, and the hardship of making every individual stockholder thus primarily liable as an individual, were urged in *Deming* v.. *Bull,* as they have been in this case, and were there disposed of as they must be here, by saying that having voluntarily placed themselves in that condition for the sake of gain, the stockholders must abide the inconveniences and loss that may be incident to it.

· How then may such stockholders be sued ? The principles adopted in the cases cited would seem to lead logically to the result that suit must be brought against the stockholders (if at all as individuals) precisely as in other cases of copartnership or joint associated liability, and that if a defendant would take advantage of any non-joinder· of parties he must .plead in abatement. ·.But it was holden in the case cited from 24 Wendell, of *Bank of Poughkeepsie* v. *Ibbotson,* that the stockholders were *severally* and not jointly liable. That decision is not placed on the ground that the term *individual* imports a several.liability, but on the ground that their interest and consequent liability being *unequal* and *limited,* a *joint* judgment cannot be rendered against *all* ; and there is force in the. reason assigned. It is immaterial how we decide the · question in this particular case, for not having pleaded in abatement, the defendant is without remedy in any view of the case which can be taken. It is however important to the profession and to the public that the rule be settled, and, as required for the convenience of all parties and by the necessity of the case, although a departure from the general principle, we follow the rule adopted in that case. The suit was therefore properly instituted against the. defendant alone.

The fact that bill-holders of the bank ·were entitled to a priority of payment cannot in any way avail the defendant. Provision is made in the law for the ·payment of the bills by the auditor of the state with the avails of the securities in his hands, and *non constat* that they were insufficient. If demand had been made of the defendant by the receiver for

the amount for which he was made individually liable, for the purpose of paying the holders of the circulation of the bank a deficiency which the stocks in the hands of the auditor did not pay, and he had paid over for that purpose to the receiver, and set the fact up in his defense, he would have been in a condition perhaps to make that question. Nothing of the kind appeared, and he was in no condition to make it on the trial, and is in no condition to be heard upon it now.

The defendant further asked the court to charge that there could be no recovery in the action without evidence of a judgment recovered against the bank, and an attempt by execution to collect the same ; relying on the 24th section of the act of the state of Minnesota concerning corporations, which is as follows :—"In none of the cases contemplated in this chapter can the private property of stockholders be levied upon for the payment of corporate debts, while corporate property can be found with which to satisfy the same ; but it will be sufficient proof that no property can be found if an execution has issued on a judgment against the corporation, and a demand thereon made of some one of the last acting officers of the body for property on which to levy, and if he neglects to point out any such property." We are of opinion that the evidence that the bank was insolvent, and all its property had gone into the hands of a receiver, was sufficient proof that no property could be found, and excused an effort to collect by suit against the bank. Proof of the fact that no property can be found is not confined to an unsuccessful demand on execution. That is one mode of proving the fact, and it is declared by the statute to be a sufficient mode. But any other sufficient evidence may be given ; and the vesting of all the property in a receiver, and the withdrawal of it thereby from the reach of an officer, is sufficient. The court properly declined to charge as requested.

These views dispose of both the motions, and the superior court must be advised to render judgment on the verdict.

In this opinion the other judges concurred.