L. F. WEHRMAN & Co., Plaintiffs, *v.* CHAS. C. REAKIRT ET AL., Defendants.

The liability of individual stockholders, under the constitution and statute of Ohio, is collateral to the principal obligation of the corporation, and is to be resorted to by the creditors only in case of the insolvency of the corporation, or where payment can not be enforced against it by the ordinary process of execution.

Each stockholder of an insolvent corporation, in addition to the loss of his stock, is liable in a sum equal to the amount of his stock to all the creditors of the corporation. But between the stockholders themselves, there is an equitable right to have a contribution by each, in proportion to his stock, and this equitable right will be enforced by the court in the creditor's suit so far as it can be done without prejudice to the paramount right of the creditors, who are entitled to be paid in full, and to hold each solvent stockholder to the full extent of his statutory liability, irrespective of those who are insolvent or beyond the jurisdiction of the court.

Wehrman v. Reakirt et al.

In determining whether a stockholder is individually liable for debts of the corporation after a transfer of his stock, it is not essential to the validity of such transfer that it should be entered upon the register, or that a new certificate of stock should be issued; but it is necessary that the transfer be made in good faith and with consideration, and not merely to escape the liabilities of the corporation already incurred; nor can any transfer relieve the stockholder from his individual liability for debts of the corporation, incurred while he was a stockholder.

The liability of a stockholder, from the time of the commencement of a suit, for an amount of indebtedness exceeding the principal of the stock owned by solvent stockholders within the jurisdiction of the court, is fixed for the specific sum equal to the amount of each of such stockholders' stock, and the debt carries interest from the commencement of such suit, although the amount of the creditor's recovery may thereby exceed the stockholder's original liability.

RESERVED FROM SPECIAL TERM.—This is a suit by a judgment creditor of the Cincinnati Home Insurance Company, in behalf of himself and all other creditors of the company, to enforce the statutory individual liability of the stockholders to the creditors. The company is shown to be insolvent, and to have made an assignment for the benefit of its creditors. The case has been referred to a referee, who, in pursuance of the order of reference, has reported that the liabilities of the corporation are $141,879.60, of which $38,879.68 is due to policy holders for unearned premiums; that the assets of the corporation in the control of the assignee, nominally amount to $13,953.64, the actual value of which is not ascertained; that the amount of stock issued and held is about $140,000, so that the additional liability of the stockholders is also $140,000; that a large portion, not less than fifty per cent. on the whole amount of stock, is held by insolvent parties, so that the entire amount of the statutory additional individual liability will be required to meet the indebtedness of the company; and he reports that the creditors are entitled to a judgment or decree against the stockholders served, for the full amount of their statutory liability. All the stockholders within the jurisdiction of

the court have been served and are parties; but a part of
the stockholders are beyond the jurisdiction of the court
and have not been served.    A motion is made to set aside
this finding, on the ground that it does not appear that
the liabilities of the company are sufficient to absorb all
the assets in the control of the assignee, $13,900, and the
entire $140,000 of additional statutory liability, and that
it should first be ascertained, with accuracy, how much is ·
the value of the assets, and how great the amount of the
liabilities, by waiting till the claimants shall file and prove
their claims after notice published, and that for the bal-
ance or excess of the liabilities so ascertained, an assess-
ment be made on the entire amount of stock, so that no
stockholder shall be required to pay any more of the
indebtedness of the corporation, than he would pay if all
the stockholders were solvent and parties to the suit.

The referee has gone upon the idea, that the company
having proved insolvent, the stockholders were each liable
individually to all the creditors in sums equal to the stock
held by them respectively.

*I. J. Miller*, for plaintiffs.

*Perry & Jenney, Stallo & Kittredge, D. Thew Wright,
Henry Snow, T. B. Paxton,* and *Jacob Burnet,* for defend-
ants.

TAFT, J.    The most important question to be decided in
the case is, whether the creditors are entitled to enforce
their claims against the solvent stockholders to the extent
of the amount of their stock, if such enforcement is neces-
sary in order to pay the creditors in full, although they
should be unable to collect anything from other stock-
holders who are insolvent or beyond the jurisdiction of
the court.    It is claimed for the defendants that one stock-
holder is not a surety for another, and that each is liable
only for his proportional share of the debt, although his

statutory liability (to an amount equal to his stock) should not be exhausted, and the creditor should not be fully paid.

This is a question of great importance under our constitution and laws.

The constitutional provision on the subject is contained in section 3 of article 13, viz: "Dues from corporations shall be *secured* by such individual liability of the stockholders and other means as may be prescribed by law; but in all cases each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum at least equal in amount to such stock."

The Cincinnati Home Insurance Company was organized under the act to provide for the creation and regulation of incorporated companies in the State of Ohio, passed May 1, 1852, as amended April 17, 1854, section 78 of which provides, that "all stockholders of any railroad, turnpike, or plank road, magnetic telegraph, or bridge company, or any joint stock company organized under the provisions of this act, shall be deemed and held liable to an amount equal to their stock subscribed, in addition to said stock, *for the purpose of securing the creditors of such company.*" 1 S. & C. 310; 4 Curwin's Stat. 2582.

The Supreme Court, in *Bright* v. *McCormick,* 17 Ohio St. 95, held that this liability of individual stockholders is collateral to the principal obligation of the corporation "and is to be resorted to by the creditors only in case of the insolvency of the corporation, or where payment can not be enforced against it by the ordinary process."

This liability is several in its nature, because the constitution provides that " *each stockholder* shall be liable to a further sum at least equal in amount to his stock."

We are of opinion that the insolvency, on the happening of which the individual liability of the stockholders can be enforced, is not necessarily the absolute exhaustion of all the assets of the corporation. It may be evidenced by

a failure to make the money on the ordinary process of execution against the company.

The majority of the court are also of opinion, that each stockholder, to the extent of his stock, is legally liable for the entire indebtedness. But between the stockholders, there is an equity to have a contribution in proportion to the amount of stock owned by each. This equity will be respected by the court, so as not to put upon any stockholder the trouble, expense, and risk of bringing a new suit to compel other stockholders to refund moneys which they ought to contribute in the first instance, so far as it can be done, without prejudice to the rights of the creditors. But this equity between the stockholders is not paramount to the right of the creditors to be paid, and if it is not possible to reach all the solvent stockholders, or subject them to the jurisdiction of the court without unreasonable delay, those who are found within the jurisdiction of the court may be required to pay the indebtedness of the company to the extent of their individual liability, without prejudice to their right to subject their co-stockholders to a contribution by other subsequent proceedings.

In the present case, the majority of the court is satisfied that the evidence sustains the finding of the referee on this point, and that the stockholders should be required to pay the entire amount of their additional liability under the constitution and statute already referred to.

The evidence shows that the aggregate liability of the solvent stockholders will not be sufficient to pay the indebtedness, and it would be unjust to the creditors to make longer delay in rendering judgment against those who are before the court. The absence from the jurisdiction of the court, or the insolvency of one stockholder, is no defense for another, nor any reason for delay on the part of one who is solvent, to pay the indebtedness of the corporation to the extent of his liability. This, we think, is consistent with the ruling of the Supreme Court in the cases of *Wright* v. *McCormick* and *Umsted* v. *Buskirk,* re-

ported in 17 Ohio St. 86 and 113; and necessary, by any reasonable construction of the constitution and statute.

If there were others within the jurisdiction of the court not served with process or not parties, they would have to be brought in and made to contribute. But it is conceded that such is not the case.

It is insisted that the Supreme Judicial Court of Massachusetts has decided differently, and that the cases of *Crease* v. *Babcock,* 10 Met. 525, and *Grew* v. *Andrews, Breed & Co.,* in 10 Met. 569, are authorities against the position we have announced. The statute of Massachusetts, under which those decisions were made, provided " that the holders of stock in any bank at the time when its charter should expire should be liable in their individual capacities for the payment and redemption of all bills which may have been issued by said bank, and which should remain unpaid, *in proportion to the stock they may respectively hold at the dissolution of the charter.*" The court held under that statute, that each stockholder was liable only for his own proportion of the unpaid bank notes, and that every other stockholder was liable for his own share or proportion, and that one was not liable for the share or proportion of any other. This construction turned upon the language of the act.

There was no constitutional provision on the subject. Our constitution has no such limitation on the individual liability of stockholders, nor has the statute. By our constitution, " each stockholder shall be liable over and above the stock by him or her owned " " to a further sum at least equal in amount to such stock ;" and by the statute " all stockholders " " shall be deemed and held liable to an amount equal to their stock subscribed, in addition to said stock, for the purpose of securing the creditors of such company."

The liability is several, and collateral to the principal indebtedness, but it is legally without any other limit than

the amount of the stock owned by the stockholder on the one hand, and the entire indebtedness of the corporation on the other.

The liability is necessarily several, because it is for different sums depending upon the respective amounts of stock owned. No joint judgment could be rendered; but each is liable for all, to the extent of his stock. *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend. 479, is an authority, Thompson, J., giving the opinion.

In *Erickson* v. *Nesmith*, 46 N. H. 371, it was held, under a statute providing for the filing a petition in equity to subject stockholders, in order to make all contribute, that the plaintiff might have a decree against the stockholders individually who had been served, or who had become voluntarily parties and who were found solvent, for the whole amount of their debt and costs, to be apportioned among them *pro rata*, each paying such proportion of the whole debt, as his stock bears to the whole amount of stock owned by the solvent stockholders who were parties to the suit. This is the rule we have indicated as the true one under our statute, and applicable to the present case. *Patterson* v. *Wyomissing Co.*, 40 Pa. 117; *Paine* v. *Stewart*, 33 Conn. 516; *Dauchy* v. *Brown*, 24 Vt. 197; *Coleman* v. *White*, 14 Wis. 700.

We think that the facts before the referee show that, upon the principle above indicated, the plaintiffs are entitled to a decree against the defendant stockholders respectively, for the full amounts of their individual liability.

It is claimed by Overdick, one of the defendants, who is charged as owner of stock to the amount of $5,000, that he had transferred $4,000 of his stock before the insolvency of the company in good faith, and was not therefore chargeable as owner of the stock so transferred. The transfer was not entered on the company's books of transfer. In a very few days after the transfer the insolvency of the company was developed, and an assignment was made under an assignment law of the State.

We think that the fact that the transfer was not entered on the books of the company and accepted, is not decisive against the validity of the transfer. But there are two objections to this transfer, as a defense to this action. First, that the sale and transfer were made just before the assignment as an insolvent, and for a nominal consideration. The presumption is strong under the circumstances that the transfer was made merely for the purpose of getting rid of the liability. But the decisive objection to this defense is, that the liabilities of the company were incurred in the time of the ownership by the defendant Overdick. If there were any liabilities contracted after this transfer, they were of very small amount. The finding of the referee on this point appears to be sustained by the evidence that Overdick is liable as an owner of $5,000 of the capital stock in the company.

J. C. Tucker, another defendant, claims to be relieved from his liability as owner, because he transferred his stock on the 7th March, 1864. This transfer seems to have been *bona fide*, at 33 per cent., to Eber Jones. In this case, also, the new certificate had not been issued to Jones.

This transfer was made about six months earlier than that in the Overdick case. But the liabilities had been incurred which have now to be paid, or a great majority of them, and we conclude that we have no sufficient ground to set aside the finding of the referee on this point.

Barber, Choate & Naber are also charged by the referee as stockholders in the amount of $3,000. The evidence in the case of these defendants satisfies the Court that they were never actual stockholders, although their names did appear upon the books of the corporation for a short time. The contract with Bennett, under which they were to own the stock, never went into effect, and was rescinded. We conclude that the liability on account of that stock rested upon Bennett, and not upon Barber, Choate & Naber, and the finding of the referee will be corrected in that respect.

An objection is taken to the proof of claims as allowed

and stated by the referee, on the ground that he has taken the proof of allowance by the assignee, as evidence. There seems to be no serious question, except as to the $38,800 for unearned premiums due to the policy holders, who are entitled to have their policies canceled, and the unearned part of their premiums returned. The proceeding of the assignee, is by publishing a notice to claimants to present their claims. The claims for losses, appear to have been presented in response to such a notice. But it is presumed and argued that such was not the case with the unearned premiums. It is claimed that the sums were so small, being from a few cents to a hundred dollars, that it is to be presumed that a large portion of these policy holders will never present their claims for return of premium, and that, therefore, it is not necessary to provide for their payment. We think that the proper course to have been pursued was to notify by publication the creditors and claimants to present their claims, and we might regard the omission of such a notice as an adequate reason for postponement of proceedings against stockholders as to their individual liability, if it did not appear that an amount of valid claims was already presented, sufficient to absorb the liability of all the solvent stockholders.

It appears from the referee's report that a very large part of the stockholders are not solvent, a majority of whom have gone also beyond the jurisdiction of the court.

There is, for instance, D. M. Bennett holding stock to the amount of.............................................$30,000
On which $20,100 are unpaid.............................. 20,100
                                                        _____
                                                        $50,100
There is a Mrs. Standart holding........................$10,000
On which are unpaid.....................................  6,700
And C. M. Ransom holding....................$10,100
On which is unpaid................................  6,767
                                                  _____$16,867

And many others holding smaller amounts, all gone beyond our reach and reported insolvent. There are many excellent names among the stockholders, who will undoubtedly pay promptly whatever shall be found to be their share of the load. They have been imposed upon by these delusive holders of stock not paid for, whose individual liability is a cheat and a sham. In amount, these non-paying nominal men are in a majority, or nearly so. The consequence is, that the amount of stock held by men whose individual liability is solid or reliable is less than the amount of the debts in whatever way we estimate them.

The consequence is unavoidable, that a decree should go against the stockholders for the full amount of their additional liability. This result is in some respects unsatisfactory, because it requires the solvent stockholders to pay indebtedness, which ought to be paid by those who are not solvent. But we can not deny to the creditors their rights under the constitution and the law.

A question has been made as to the time from which the additional liability of the stockholders shall bear interest, the plaintiffs claiming that it should commence with the date of the original liability of the company, and the defendants claiming that it should be regarded as a penalty of a bond, and carry no interest until judgment rendered against the stockholder for his additional liability.

In Sedgwick on Damages, 425, the author says, that " the American rule from all the cases seems to be that against a surety in *debt on bond*, nothing shall be recovered beyond the penalty," citing *Clark* v. *Bush*, 3 Cowen, 151; *Rayner* v. *Clarke*, S. C. 581.

In the following cases, however, viz: *Fraser* v. *Little*, 13 Mich. 195, and *Brainard* v. *Jones*, 18 N. Y. 35, it was held that after the default of a surety in a bond for the payment of money, the debt carries interest against the surety and the judgment may in that manner amount to more than the penalty in the bond.

And on that principle, it was held, in *Burr* v. *Wilcox*, 22 N. Y. 551, that "where the stockholders of a corporation are by statute severally individually liable to the creditors of the company, to an amount equal to the amount of stock held by them respectively, this liability, from the time of the commencement of a suit for a debt exceeding the principal of the defendant's stock, brought to enforce it, is fixed for the specific sum equal to the amount of the stock, and the debt carries interest, although the amount of the creditor's recovery thereby exceeds the stockholders' original liability." In the present case we conclude that the same rule is applicable, and that the individual liability should bear interest only from the commencement of this suit.

A question has been made upon two items allowed by the judge at Special Term against the stockholders, viz: for the fee of the plaintiff's counsel and for the cost of the reference by which the amount of indebtedness and of stock was ascertained, in order to determine the amount which each defendant stockholder should contribute. We have concluded that the counsel fee, and the fee of the referee, were expenses incident to the ascertainment of the extent of relief to be claimed or granted for the benefit of plaintiffs, as well as of the defendants, and should be charged to the fund, and the order at Special Term may be set aside as to these two items, and corrected by charging the same items to the fund in the hands of the receiver.

HAGANS, J., dissented. The main question upon which we differ, arises upon the motion for judgment for the "additional" liability found to be due from the respective stockholders for the par value of their stock.

Article 13, section 3, of the constitution, is as follows: "Dues from corporations shall be secured by such individual liability of the stockholders and other means as may be prescribed by law, but in all cases each stockholder shall be liable over and above the stock by him or her owned, and any amount unpaid thereon, to a farther sum at least equal in amount to such stock."

This clause of the constitution was the result of a compromise in the constitutional convention. The discussion upon it was lengthy and able. The whigs were for imposing no liability whatever on stockholders. The democrats were for making stockholders liable as partners, without reference to amounts of stock held: so that if one held but a small amount of stock, his whole private property should be answerable to the creditors of the corporation, if necessary. The whigs desired no change in the law as it had been; the democrats, representing those who smarted under losses by trusting corporations, desired every corporation to be held as a partnership.

Section 78 of the act of 1852 (1 S. & C. 310), already referred to, under which this action is brought, is as follows: "All stockholders   *   *   *   of any joint stock company organized under the provisions of this act, shall be deemed and held liable to an amount equal to their stock subscribed in addition to said stock, for the purpose of securing the creditors of such company." The balance of this section relates to the directors of religious and other societies, and makes them liable individually. Our Supreme Court, *Wright, etc.* v. *McCormick, etc.*, 17 Ohio St. 95, has set at rest the construction of the enactment. "The liability thus imposed on stockholders is not a primary resource or fund for the payment of debts of any corporation. It is collateral and conditional to the principal obligation which rests on the corporation, and is to be resorted to by

the creditors only in case of the insolvency of the corporation, or when payment can not be enforced against it by the ordinary process. It is a security provided by law for the exclusive benefit of the creditors, over which the corporate authorities have no control. The liability on the part of the stockholders is *several* in its nature, but the right arising out of this liability would seem to be intended for the common and equal benefit of all the creditors." It is apparent from the reading of the section quoted, as well as from the opinion of the Supreme Court, that the stockholders are not jointly, nor jointly and severally liable. The liability is created by statute, not by contract, and is incidental to the relation of stockholder. In respect to the stock held by each owner, it is separate property, and the stockholder is the sole owner and is separately liable thereon. There is nothing in the constitution or in the act, which gives stockholders of corporations the character or imposes on them the liabilities of partners, as in several of the States, and perhaps in Ohio under special statutes. See *Owen* v. *Purdy,* 12 Ohio St. 73; *Commercial Bank* v. *Factory,* 6 R. I. 154; *Morey* v. *Clark,* 17 Mass. 330; *Garrison* v. *Howe,* 17 N. Y. 458; *Neon* v. *Okley,* 2 Hill, 265; *Chesley* v. *Pericode,* 32 N. H. 388.

When persons are jointly, or jointly and severally liable, it is because, as between them and the creditors, each is liable, by contract *in solido,* for the whole amount, and there is, therefore, no injustice in requiring any one of them to pay the whole amount, leaving him to obtain redress among his co-debtors as he can. If necessary, one may be compelled to pay the whole debt without reference to the solvency of the rest of his co-debtors. He is a guarantor, so to speak, to the creditors of the solvency of the co-debtors. It will be observed, however, that the statute does not make the stockholders liable to the corporation, nor for each other, but for the purpose of securing the creditors of the corporation.

Many of the stockholders are not within the jurisdiction of the court, and can not be reached by either process or

publication, and can not therefore be bound by its judgment. And some of those who are within the jurisdiction of the court and served with process, and upon whom a judgment will be binding, are nevertheless insolvent, and some, as appears by the receiver's report, have been discharged by proceedings in bankruptcy. It follows, from what has been stated, that those who are solvent do not stand in the relation of joint or joint and several debtors to the creditors, nor as sureties or guarantors for the insolvent stockholders. The stockholders are not liable to a common burden, but only each is severally liable for the amount charged upon him by the statute in respect of his separate stock. The creditors having but a limited claim upon those who are liable, can not throw upon them the loss arising either from the insolvency of some stockholders or from the absence of others from the jurisdiction of the court, all of whom are made equally liable by the statute. To hold otherwise would be to say that the debts of an insolvent corporation are practically a burden on the solvent stockholders only; and they who pay the debt relieve the insolvent stockholders, *pro tanto*, under our statute, which makes all the stockholders equally liable to the creditors, and in no sense makes them jointly or jointly and severally liable to the creditors, or for the solvency of each other. In *Umstead* v. *Buskirk*, 17 Ohio St. 113, it is broadly stated that the "additional liability" can not be enforced against part of the stockholders at the election of the creditors, without the right on their part to call on their co-stockholders for a general account and contribution in proportion to their shares of stock. "The right of contribution," says the court, "grows out of the organic relation existing among the stockholders. As between them and the creditors, each stockholder is *severally* liable to all the creditors, and as between themselves, *each stockholder is bound to pay in proportion to his stock.*" They have the right to insist upon contribution on that principle, and, growing out of this right, is the duty of the stockholders to contribute. No one or more of the stockholders, therefore, can shift this duty upon the shoulders of any

Wehrman *v.* Reakirt et al.  .

other one or more of them, and the creditors can not exact the performance of this duty from one or more only, to the exclusion of any one or more, for any reason whatever. These views of that clause of section 78 of the statute (1 S. & C. 310), already quoted, are strengthened by the clause of the same section which immediately succeeds, relating to the liability of the directors of religious and other societies, in which it is declared they " shall be deemed and held individually liable for all debts contracted by them for their respective societies or associations." Here the legislature has substantially declared that directors of the societies shall be liable as partners, just as if they were not incorporated. But we are not to legislate into the first clause relating to *sto ckholders* the individual liability imposed upon *directors* in the succeeding clause, but rather to construe the first clause as the legislature plainly intended it to be. We are not for any reason to enlarge the statutory liability. No case, it is believed, can be found in any of the States where similar legislation has been had, enforcing the individual liability of stockholders, on the ground that they are jointly liable or jointly and severally liable, in which that legislation does not, by some expression in the statute, plainly authorize such a construction. In our statute there is no such expression.

It is said by my brethren that the liability is necessarily several, because it is for different amounts, depending upon the respective amounts of stock. No joint judgment can be rendered, but each is liable for all to the extent of his stock. The judgment must be for different amounts. The proposition, when carefully considered, states, in fact, that the liability is joint and the judgment must be several, because the liability is several, which is hopeless confusion, as it seems to me.

Holding these views as I do, this cause presents only the ordinary contingency as to many of these stockholders which all creditors assume, viz : that their debtors may be either unable to pay when called upon, or be beyond the reach of process, though the demand be perfectly valid and capable of suit. *Crease, etc.* v. *Babcock, etc.,* 10 Met. 525.