WHITMAN v. NATIONAL BANK OF OXFORD.

(Circuit Court of Appeals, Second Circuit. July 21, 1897.)

No. 135.

1. CORPORATIONS—STOCKHOLDERS' LIABILITY—TRANSITORY ACTIONS.
　　An action by a judgment creditor of an insolvent Kansas corporation to charge a stockholder with the amount of the judgment under Gen. St. Kan. 1868, c. 23, § 32, is transitory in its nature, and may be brought in a federal court in another state against a stockholder who resides there.

**2.** SAME—JUDGMENT—PRESUMPTION OF VALIDITY.

In an action to charge a stockholder with the amount of a judgment recovered against an insolvent corporation, an objection that the judgment was void because the cashier of the corporation made a voluntary appearance, and waived issuance of process, after the corporation had ceased to do business, is without merit, it appearing that an attorney appeared and filed an answer for the defendant. The presumptions are in favor of the regularity of the judgment, and it is for the defendant to show that it was collusive, or that the attorney was an intruder.

**3.** SAME—PROOF OF CHANGE OF CORPORATE NAME.

A properly authenticated copy from the office of the secretary of state of the state of Kansas of an original certificate of a change of corporate name, filed in his office by the corporation's president or secretary, as required by the state law, is sufficient proof of the change of name, until its truthfulness has been successfully attacked.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action at law by the National Bank of Oxford, Pa., against George L. Whitman, to charge him, as a stockholder, with the amount of a judgment obtained by plaintiff against a Kansas corporation. The circuit court directed a verdict for the plaintiff, and entered judgment accordingly (76 Fed. 697), and the defendant brought the case to this court on writ of error.

The constitution of the state of Kansas provided prior to the year 1866, and still provides, in section 2 of article 12, as follows: "Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder; and such other means as shall be provided by law; but such individual liabilities shall not apply to railway corporations, nor corporations for religious or charitable purposes." Section 32 of chapter 23 of the General Statutes of Kansas of 1868, section 40 of the same chapter as amended in 1883, and section 44 of the same chapter, which are still the statutes of the state, provided as follows:

Section 32: "If an execution shall have been issued against the property or effects of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders, to an extent equal in amount to the amount of stock by him or her owned, together with any amount unpaid thereon; but no execution shall issue against any stockholder, except upon an order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and, upon such motion, such court may order execution to issue accordingly; or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

Section 40, as amended: "A corporation is dissolved: First, by the expiration of the time limited in its charter; second, by a judgment of dissolution rendered by a court of competent jurisdiction; but any such corporation shall be deemed to be dissolved for the purpose of enabling any creditors of such corporation to prosecute suits against the stockholders thereof to enforce their individual liability, if it be shown that such corporation has suspended business for more than one year, or that any corporation so suspended from business shall for three months after the passage of this act fail to resume its usual and ordinary business." Laws 1883, p. 88.

Section 44: "If any corporation created under this or any general statute of this state, except railway or charitable or religious corporations, be dissolved, leaving debts unpaid, suit may be brought against any person or persons who were stockholders at the time of such dissolutions without joining the corporation to such suit; and if judgment be rendered and execution satisfied, the defendant or defendants may sue all who were stockholders at the time of disso-

83 F.—19

lution for the recovery of the portion of such debt for which they were liable and the execution upon the judgment shall direct the collection to be made from property of each stockholder respectively, and if any number of stockholders (defendants in the case) shall not have property enough to satisfy his or their portion of the execution, then the amount of the deficiency shall be divided equally among all the remaining stockholders, and collections made accordingly, deducting from the amount a sum in proportion to the amount of stock owned by the plaintiff at the time the company dissolved."

The Arkansas City Bank was formed in 1886, under the laws of the state of Kansas, to do a banking and real-estate business with a capital of $20,000, divided into 2,000 shares of $100 each, and was located in Arkansas City, in said state. The original stockholders, their residences, and the number of the. shares of each stockholder were as follows: George L. Whitman, New York City, 1,000 shares; Samuel Newell, New York City, 649 shares; James L. Huey, Arkansas City, 349 shares; Mary L. Newell, New York City, 1 share; Mary E. Huey, New York City, 1 share. In 1889 the name of the bank was changed, and became the Arkansas City Investment Company. In December, 1890, it made a general assignment for the benefit of its creditors, and from that time completely suspended its business, and thereafter, at the expiration of one year, was deemed to be dissolved under the provisions of section 40 for the purpose of enabling its creditors to sue its stockholders. About four months before its failure it indorsed and guarantied for value two promissory notes, together amounting to $4,875, which were discounted by the plaintiff, the National Bank of Oxford, located in Pennsylvania. The assignee made payments upon these notes from time to time, but in 1895 the plaintiff duly obtained judgment against the bank, in a state court of Kansas, for the sum of $3,468.30, the bank having appeared, and having made answer to the complaint. An execution upon this judgment was returned to court wholly unsatisfied, and it appeared that the bank had at that time no assets or property. The plaintiff thereupon brought an action at law in the circuit court for the Southern district of New York against the defendant George L. Whitman, being the owner of 1,000 shares of the stock of this bank, to recover from him the amount due to the plaintiff from said bank. The complaint in the action alleged all the foregoing facts. The defendant had not theretofore been subjected to any liability as a stockholder of the bank. At the close of the trial of this suit before a jury each party moved for the direction of a verdict in its favor. The court directed a verdict in favor of the plaintiff for the amount of the Kansas judgment, with interest. To reverse the judgment entered upon this verdict a writ of error was brought. The principal question presented by the assignments of error was as to the character of the remedy, provided by the Kansas statutes against a stockholder of an insolvent corporation,—whether it was a special, peculiar, and local remedy created by the statute and without force and not capable of being enforced outside of the limits of the state of Kansas.

William G. Wilson and Joseph H. Choate, for plaintiff in error.
William B. Hornblower, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts as above). It will be observed that the complaint contains the averments which are required either by section 32 or section 44, and seeks to enforce an alleged liability of the defendant, whether he is to be charged with the amount of the Kansas judgment or with the amount of the debt due to the plaintiff from the corporation; and it is to be further noticed that not only the fact of the judgment was proved, but that also all the facts upon which the judgment was based, such as the guaranty, the discount, and the nonpayment, were proved, so that the question which is often raised as to the force and effect of the original judgment, and how much it establishes against the stockholder, is immaterial. The

plaintiff has proved all the facts that are to be proved,—whether the judgment conclusively established against the stockholders the indebtedness of the bank, or was only prima facie evidence of it, or was no evidence of the indebtedness, but was merely a condition precedent to a suit against the stockholder. The main question in the case—whether a suit to enforce the liability declared by the constitution of Kansas, and provided by its statutes, was transitory in its character, and could be brought by an action at law in a court of another state against a single stockholder, who was a resident of such state—has already been stated. It is to be premised, as was clearly shown by Justice Clifford in Morley v. Thayer, 3 Fed. 739, with respect to this particular constitutional provision, that it is not self-executing in its character, and that statutory legislation was, therefore, required to carry it into effect. Groves v. Slaughter, 15 Pet. 449; Wells v. Robb, 43 Kan. 201, 23 Pac. 148. It is also to be premised, as stated in Pollard v. Bailey, 20 Wall. 520, and reaffirmed in Bank v. Francklyn, 120 U. S. 747, 7 Sup. Ct. 757, that the statutory remedy is exclusive. "A general liability created by statute, without a remedy, may be enforced by an appropriate common-law action. But when the provision for a liability is coupled with a provision for a special remedy, that remedy, and that alone, must be employed." Two other decisions have been recently given by the supreme court, which do not undertake to construe this class of statutes, but which are important because they declare the conclusion which must naturally follow if the plaintiff's construction has been established by the highest court of Kansas, and because they show the particulars in this class of statutes which the supreme court regards as especially significant upon the question of construction. The case of Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263, was based upon a provision in a general act of the state of New York for the formation of corporations that all the stockholders of every company incorporated under it shall be severally individually liable to creditors of the company until the whole amount of the capital stock shall be paid in and certified. The court, after saying that great, if not conclusive, weight must be given to the construction which the highest court of New York had placed upon the statute, and that, following such construction, the liability was in contract, said that "it can be enforced by an action sounding in contract against a stockholder found in another state," and that a resort to equity was not necessary, but an action at law was adequate. Upon the last point the court said:

"Lastly, it is objected that the declaration sets out a case which should have been prosecuted in equity, and not at law. There is no ground for this objection to rest on. In the cases of Pollard v. Bailey, 20 Wall. 520, and Terry v. Tubman, 92 U. S. 156, to which we are referred in its support, the liability of the stockholders was in proportion to the stock held by them. Each stockholder was, therefore, only liable for his proportion of his debts. This proportion could only be ascertained upon an account of the debts and stock, and a pro rata distribution of the indebtedness among the several stockholders. This, the court held, could only be done by a suit in equity. But in this case the statute makes every stockholder individually liable for the debts of the company for an amount equal to the amount of his stock. This liability is fixed, and does not depend on the liability of other stockholders. There is no necessity for bringing in other stockholders or creditors. Any creditor who has recovered judgment against the com-

pany, and sued out an execution thereon, which has been returned unsatisfied, may sue any stockholder; and no other creditor can."

This decision was not novel in its character, although its doctrine had not been universally controlling in the state courts, but in Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, the supreme court stated its position in regard to the duty of a court of one state to enforce a statute of another state, which was penal in the popular sense, and a position which was not in accordance with the obiter remarks of the justice who delivered the opinion of the court in Steam-Engine Co. v. Hubbard, 101 U. S. 188, 192. The Huntington Case grew out of a statute of the state of New York, which made the officers of a corporation who signed and recorded a false certificate of the amount of its capital stock liable for all its debts; and the question was whether such a statute was so penal in its character that it could not be enforced in the courts of another state. The court said:

"As the statute imposes a burdensome liability on the officers for their wrongful act, it may well be considered penal, in the sense that it should be strictly construed. But, as it gives a civil remedy at the private suit of the creditor only, and measured by the amount of his debt, it is, as to him, clearly remedial. To maintain such a suit is not to administer a punishment imposed upon an offender against the state, but simply to enforce a private right secured under its laws to an individual. We can see no just ground, on principle, for holding such a statute to be a penal law, in the sense that it cannot be enforced in a foreign state or country."

It becomes, therefore, of prime importance to ascertain what the highest court of Kansas has said in regard to the transitory character of an action to enforce the statutory remedy, or what it has said upon the nature of the stockholder's obligation, and whether it was several or joint, definite, or adjustable according to a proportion. The germ of the present statutes of Kansas is found in the territorial laws of 1855. The entire body of statutes which were enacted at that session was afterwards repealed, and statutory provisions in regard to the individual liability of stockholders seems to have been passed with respect to particular classes of corporations, and not to have been reproduced in a condensed form, until the revision and codification of 1868.

The first judicial decision of Kansas in regard to the individual liability of stockholders was upon the proper construction of section 14, c. 31, Laws 1863, in regard to the incorporation of insurance companies, which was as follows: "The stockholders of any company organized under this act, shall to the amount of stock by them held, be jointly and severally, liable for all debts or responsibilities of the company." The supreme court of Kansas, in Grund v. Tucker, 5 Kan. 70, held that "under this statute, a creditor may maintain an action at law against one or more stockholders in an insurance company organized under the act of 1863, to recover a debt due by the corporation." The court thus anticipated the decision in Flash v. Conn, regarded "each stockholder as individually liable for the debts of the company to an amount equal to the amount of his stock," rejected the idea of a proportionate liability or a pro rata distribution of debts among stockholders, and consequently rejected the idea that the creditors' remedy must be in equity. In Hentig v. James, 22 Kan. 326, the Kan-

sas court, in discussing the mode of procedure under section 32, said that the creditor has two modes, either by the issuance of an execution against the stockholder, or by an action to charge him with the amount of the judgment against the corporation, but said nothing either in favor of or against the exclusive jurisdiction of the Kansas court over the second mode of procedure. In Howell v. Manglesdorf, 33 Kan. 194, 5 Pac. 759, the question of the transitoriness of the action at law was closely touched. A creditor had obtained an unsatisfied Kansas judgment against a Kansas corporation, had given notice to a nonresident stockholder, who was sought to be charged, and had moved the court in which judgment was rendered to order execution to issue against such nonresident. The question of the power of the trial court to grant such a motion came before the supreme court, which said that the first mode of procedure was not applicable to a nonresident stockholder, and that the second mode was "an ordinary action to be instituted wherever personal jurisdiction of the stockholder can be acquired"; and further said that the ruling "does not deprive a creditor of a remedy against the stockholder residing in another state, and upon whom service cannot be obtained here." "While the liability is statutory, it is one which arises upon the contract of subscription to the capital stock of the corporation, and an action to enforce the same is transitory,"—citing Flash v. Conn, supra. It is true that this language is obiter in the sense that it was not absolutely necessary to the decision of the question before the court, which was whether, by notice to a nonresident, the Kansas court could order execution to issue against him, but it clearly stated the theory of the court respecting the nature of the statutory remedy and the way in which it is to be worked out, and in a certain sense was not obiter, because it answered the argument that the liability of nonresident stockholders must be enforced by notice and the levy of an execution, or was not enforceable, and that, therefore, in many instances, the creditors were without remedy.

Inasmuch as the answer to the question in regard to the transitoriness of the action is much aided by the fact that the remedy of the statute is several and individual, and that the liability of the stockholder is a definite and fixed one, the next decision of the highest Kansas court, in Abbey v. Dry-Goods Co., 44 Kan. 415, 24 Pac. 426, is important. The case was under section 44, and the complaint joined several stockholders as defendants, against whom several judgments were recovered, the aggregate of which amounted to the debt of the creditor against the corporation. The court held that the liability of stockholders to creditors under this section was not joint, but that each must be sued separately. The statute was, in substance, a copy of the Missouri statute in regard to stockholders' liability, and the decision of the Missouri court of appeals upon the same subject (Perry v. Turner, 55 Mo. 418), and the decisions in Bank v. Ibbotson, 24 Wend. 473, and Paine v. Stewart, 33 Conn. 516, upon analogous statutes, are to the same effect. The drift and tendency of the Kansas decisions, other than the one in the Howell Case, in regard to the character of the stockholders' liability and of the creditors' remedy under section 32, are manifest. The means

which the statutes provided to enforce the individual constitutional liability determined and fixed the extent of the amount which must be paid by each stockholder individually, and which in no manner depended upon what any other stockholder could or ought to pay. As the statute was not penal, it is not important whether the liability is called statutory or one based upon contract. It is statutory because it did not exist at common law, and it is contractual because "every one who becomes a member of the company by subscribing to its stock assumes this liability." Flash v. Conn, supra. Section 32 has thus, by the decisions of the state court, the indicia of a transitory action, and, although these indicia might be overcome by a manifest intent of the legislature that the action should be local, yet, when their intent has been interpreted by the highest court of their state, as in the Howell Case, supra, we are not disposed to read into the statute another intent, unless such a construction is demanded. In our opinion, another construction is not called for, but the legislature intended that the action against a nonresident stockholder was not necessarily to be under the jurisdiction of the courts of Kansas. Two modes of procedure were provided,—one of a summary character, which could be used in the case of resident stockholders, but which was useless against nonresidents, and, if no means had been provided to make the liability of nonresident stockholders effective, creditors might, in many instances, lose entirely the benefit of the constitutional provision for their protection. The second mode was, therefore, provided of a transitory character, and the amount of the liability was made definite and certain, so that each stockholder could be severally sued. There is more color for the conclusion that the action under section 44 is local, because any stockholder who has paid a judgment against himself may sue the body of the stockholders, and obtain contribution from them; and this part of the proceeding looks eventually towards a proportionate division among them. It does not necessarily follow that the original judgment must have been obtained in Kansas. However this may be, we are satisfied that the proceeding against a stockholder under section 32 is transitory.

It is said that this construction has not been sustained by the highest courts of the states of Massachusetts, Illinois, and New York. It is true that in Bank v. Rindge, 154 Mass. 203, 27 N. E. 1015, which was a suit in Massachusetts to enforce the provisions of section 32 against a Massachusetts stockholder, the question of the construction of the statute was attempted to be raised, but it is also true that the attempt was not successful. The defendant demurred to the sufficiency of the cause of action as stated in the declaration, but the court was unable to decide whether the statute authorized an action in another state, for the "declaration does not, in terms, set forth any statute of Kansas, nor show to what extent the laws of Kansas above set forth are statutory or rest in judicial decisions. We are not at liberty to determine the case upon an examination of the statute of Kansas, with the assistance of any construction which may have been put upon it by the courts of that state; but we must take the case as the parties present it to

us." But in Bank v. Ellis, 166 Mass. 414, 44 N. E. 349, the pleader was more careful, and upon demurrer to a declaration upon the same statute against a Massachusetts stockholder the court said: "A declaration which sets forth that, according to the law of Kansas, the defendant stockholder of a corporation organized under the laws of that state is liable to a judgment creditor of the corporation as upon a contract, which is suable anywhere, is good;" and, further, that "jurisdiction exists here [in Massachusetts] to enforce the liability like other debts, if the law of Kansas is accurately stated in the declaration." It thus appears that the courts of Massachusetts have not yet stated their own opinion upon the statute in question. In Fowler v. Lamson, 146 Ill. 472, 34 N. E. 932, the plaintiff had recovered a judgment against a Kansas corporation before the superior court for Cook county, Ill.; an execution had been issued upon that judgment, which was returned unsatisfied, and the plaintiff then brought a bill in equity in the courts of Cook county against stockholders to recover the amount of the judgment. This bill was dismissed upon the ground that the Kansas statute was local. In Tuttle v. Bank, 161 Ill. 497, 44 N. E. 984, the question upon the Kansas statute came before the court, as it is presented here, and it was held that an action to carry this statute into effect would not lie in another state; three of the seven judges dissenting. In Marshall v. Sherman, 148 N. Y. 9, 42 N. E. 419, the question arose upon the defendant's demurrer to the sufficiency of the complaint, and because all the necessary parties to the action were not included. The constitution and statutes of Kansas were fully set out in the complaint, but the judge who spoke for the court remarked that there was no allegation as to the meaning or effect of the statutes or of the constitutional provision under the adjudication of the courts of Kansas, and that, therefore, the court was obliged to construe them by itself. Among the various suggestions which were given in favor of sustaining the demurrer, the court was of opinion that the statutes provide for a special and peculiar remedy under the laws of Kansas. The Kansas decisions were not referred to in the opinion. It is well understood that the tendency of the decisions in the state courts has been to avoid taking jurisdiction of suits to enforce the liability of stockholders in a foreign corporation under the statutes of a foreign state, because, in the language of the court in the Rindge Case, supra, the suit is one "which involves the relation between it [the foreign corporation] and its stockholders, and in which complete justice only can be done by the courts of the jurisdiction where the corporation was created." But when the statutory remedy is one which does not involve any relation between stockholder and corporation, but touches only the liability of the stockholder to creditors (Guerney v. Moore, 131 Mo. 650, 32 S. W. 1132), the argument is simply one against the expediency of the statute. The decisions in the federal courts which affirm the jurisdiction of federal courts in other states to enforce this particular statute of Kansas are Bank v. Rindge, 57 Fed. 279, Rhodes v. Bank, 13 C. C. A. 612, 66 Fed. 512, McVickar v. Jones, 70 Fed. 754. Decisions, in addition to those al-

ready cited, in favor of jurisdiction of courts of foreign states to enforce similar or analogous state statutes, are Paine v. Stewart, 33 Conn. 516; Cuykendall v. Miles, 10 Fed. 342; Auer v. Lombard, 19 C. C. A. 72, 72 Fed. 209.

The technical points which were made by the plaintiff in error are without solidity. It is said that the Kansas court did not acquire jurisdiction to render judgment against the corporation, because the cashier made a voluntary appearance, and waived the issuance of process, at the commencement of the suit in 1895, when no business had been done by the bank after its insolvency on December 15, 1890. But an attorney at law appeared, filed an answer, to which the plaintiff replied; and the presumptions are in favor of the regularity of the judgment. It was for the defendant to show that it was collusive, or that the attorney was an intruder. Tenney v. Townsend, 9 Blatchf. 274, Fed. Cas. No. 13,832. It is next said that there was no competent evidence of the change of name of the corporation. The minutes of the proceedings were taken away with him by the president "when he left" in May or June, 1889, and some secondary evidence was given of their contents, when perhaps an insufficient foundation had been laid for it. But the statutes of Kansas provide that a corporation can change its name, and section 12 of chapter 23 of the General Statutes of 1868 provides as follows:

"Such change of name * * * shall take effect and be enforced from the date at which the president or secretary of the corporation shall file with the secretary of state an affidavit setting forth the name adopted, * * * together with the date at which such change was voted by the stockholders of such corporation."

A properly authenticated copy of the original certificate filed in the office of the secretary of state was produced, and was certainly sufficient proof of the change of name, until its truthfulness had been successfully attacked. The judgment of the circuit court is affirmed, with costs.