### WESTERN NAT. BANK OF NEW YORK v. RECKLESS.

(Circuit Court, D. New Jersey. August 3, 1899.)

1. CORPORATIONS—ACTION TO ENFORCE STATUTORY LIABILITY OF STOCKHOLDERS.
   The liability of a stockholder in a Kansas corporation to any judgment creditor of the corporation, created by the constitution and statutes of that state, is one arising upon contract; and an action for its enforcement is transitory, and, in the absence of a statute affecting the right, may be maintained in the courts of any state, or in any federal court, having jurisdiction of such matters and of the parties.

2. CORPORATIONS—ACTION TO ENFORCE STATUTORY LIABILITY OF STOCKHOLDER —NEW JERSEY STATUTE.
   The constitution of New Jersey provides (Const. art. 4, § 7, par. 3) that· "the legislature shall not pass any * ·* * law impairing the obligation of contracts or depriving a party of any remedy for enforcing a contract which existed when the contract was made." By the act of March 30, 1897 (Laws 1897, p. 124), the legislature provided that "no action or proceeding shall be maintained in any court of law in this state against any stockholder, officer or director of any domestic or foreign corporation by or on behalf of any creditor of such corporation to enforce any statutory personal liability of such stockholder, officer or director for or upon any debt, default or obligation of such corporation, whether such statutory personal liability be deemed penal or contractual, if such statutory personal liability be created by or arise from the statutes or laws of any other state or foreign country; and no pending or future action or proceeding to enforce any such statutory personal liability shall be maintained in any court of this state other than in the nature of an equitable accounting for the proportionate benefit of all parties interested, to which such corporation and its legal representatives, if any, and all of its creditors and all of its stockholders shall be necessary parties." *Held*, that a

creditor of a corporation of another state, who was given by its laws a personal right of action against any one of its stockholders for the collection of his debt in the event of the insolvency of the corporation, had, prior to the passage of such act, not merely as a matter of comity, but under the general principles of jurisprudence, a remedy for the enforcement of his contract in the law courts of New Jersey, of which remedy the act deprived him, and that, as to contracts made prior to its passage, such act was within the constitutional prohibition and void.

**3. SAME.**
The fact that such act, while forbidding the maintenance of an action at law by an individual creditor against an individual stockholder, apparently sanctions a proceeding in the nature of an accounting in equity, in which all the creditors and all the stockholders of a foreign corporation should be necessary parties, does not render it one merely changing the form of the remedy, without destroying the substantial right of action which the creditor had for the enforcement of his contract; the two rights of action being essentially different.

**4. CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACT.**
The prohibition of state legislation impairing the obligation of contracts contained in the federal constitution, and as well that in the constitution of New Jersey, which is in the same language, but, in terms, extends such prohibition also to legislation taking away the remedy for the enforcement of contracts, applies to all contracts, wherever made; and a remedy existing in New Jersey for the enforcement of a contract made in another state is protected by such provision, equally with those for the enforcement of domestic contracts.

This is an action at law by a judgment creditor of a Kansas corporation against a stockholder to enforce the defendant's personal liability under the constitution and statutes of Kansas. Heard on demurrer to declaration.

William M. Lanning, for plaintiff.
William H. Vredenburgh, for defendant.

GRAY, Circuit Judge. This case stands upon a demurrer to the first two counts of plaintiff's declaration, and is submitted to the court on written arguments of counsel, which fully and ably discuss the points raised. For the purposes of this opinion, the facts set forth in the declaration may be summarized as follows:

The Western National Bank of New York, the plaintiff in the case, is a corporation of that state, and for the purposes of jurisdiction a citizen thereof; and Catharine P. P. Reckless, the defendant, is a citizen and resident of the state of New Jersey. It is averred that the plaintiff in February, 1892, became a creditor of the Western Farm Mortgage Trust Company, of the state of Kansas, in the sum of $25,000, which indebtedness was evidenced by a judgment recovered against the said Western Farm Mortgage Trust Company in the supreme court of the state of New York. Judgment was afterwards obtained in Kansas, upon a suit brought there upon the aforesaid judgment by the plaintiff against the defendant therein, a judgment being recovered for the amount thereof, less certain sums deducted on account of credits of the Kansas company on the books of the plaintiff. The Western Farm Mortgage Trust Company was incorporated in 1887, under the provisions of the statutes in that behalf, in the state of Kansas, and organized and did business as such corporation in that state. The second section of article 12 of

the constitution of Kansas, then and ever since in force, provides as follows:

"Dues from Corporations. Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and such other means as shall be provided by law; but such individual liability shall not apply to railroad corporations nor corporations for religious or charitable purposes."

Section 32 of a statute of the state of Kansas (Gen. St. 1868, p. 198), as then and ever since existing, provides as follows:

"If any execution shall have been issued against the property or effects of a corporation, except a railway or a religious or charitable corporation, and there cannot be found any property whereon to levy such execution, then execution may be issued against any of the stockholders to an extent equal in amount to the amount of stock by him or her owned, together with any·amount unpaid thereon; but no execution shall issue against any stockholder except on order of the court in which the action, suit or other proceeding shall have been brought or instituted, made upon motion in open court, after reasonable notice in writing to the person or persons sought to be charged; and, upon such motion, such court may order execution to issue accordingly, or the plaintiff in the execution may proceed by action to charge the stockholders with the amount of his judgment."

And the plaintiff avers that said provisions of the constitution and statutes of Kansas have been so in force in said state ever since a time prior to said incorporation of the said the Western Farm Mortgage Trust Company. Plaintiff also alleges that the liability imposed on stockholders, under and by the provisions of the constitution and statutes of Kansas, is, and has been by the court of last resort of said state construed to be, a contractual, and not a penal, liability. On the assumption of such contractual liability, the present suit is brought, and the logical and technical averments are made of the promise on the part of the defendant, in consideration of such liability, to pay, etc. It is alleged that the defendant became a stockholder prior to the contraction of this debt to the plaintiff, and before it was reduced to judgment. It is also averred that an execution has been issued against the Kansas company, and returned nulla bona. The only other counts are common counts. To the two counts which substantially set forth the facts above stated, the defendant demurs generally, specifying the causes of demurrer as follows:

"(1) Because the supposed liability of a stockholder under the constitution and statutes of the state of Kansas, set forth in the said counts, respectively, is not such as can be enforced in an action at common law by a judgment creditor of said corporation in any of the courts of the state of New Jersey, or of the United States for the district of New Jersey. (2) Because by the statute of the state of New Jersey approved March 30, 1897 (Laws 1897, p. 124), entitled 'A supplement to an act entitled "An act concerning corporations" (Revision, 1896), approved April twenty-first, one thousand eight hundred and ninety-six,' which statute took effect on the 30th day of March, A. D. 1897, and enacted that 'no action or proceeding shall be maintained in any court of this state against any stockholder, officer or director of any domestic corporation for the purpose of enforcing any statutory personal liability of such stockholder, officer or director, for or upon any debt, default or obligation of such corporation, whether such statutory personal liability be deemed penal or contractual, if such statutory personal liability be created by or arise from the statutes or laws of any other state or foreign country,' and that 'no action

or proceeding shall be maintained in any court of law in this state against any stockholder, officer or director of any domestic or foreign corporation by or on behalf of any creditor of such corporation to enforce any statutory personal liability of such stockholder, officer or director for or upon any debt, default or obligation of such corporation, whether such statutory personal liability be deemed penal or contractual, if such statutory personal liability be created by or arise from the statutes or laws of any other state or foreign country, and no pending or future action or proceeding to enforce any such statutory personal liability shall be maintained in any court of this state other than in the nature of an equitable accounting for the proportionate benefit of all parties interested, to which such corporation and its legal representatives, if any, and all of its creditors and all of its stockholders shall be necessary parties,' the maintenance of a common-law action and of the present action to enforce the supposed liability set forth in said counts, respectively, is prohibited in the courts of the state of New Jersey, in consequence whereof no such action can be maintained in a court of the United States for the district of New Jersey. (3) Because the several undertakings and promises of the said defendant set forth in said counts, respectively, are, and each of them is, without consideration and void."

We must assume the correctness of the statements in the declaration, in consideration of this demurrer, that under the Kansas constitution and laws, and the construction put upon them by the court of last resort in that state, an action at law by a single judgment creditor lies against a single stockholder to enforce the liability created and provided for by said constitution and laws of said state. The correctness of this statement is, moreover, established by an examination of the said provisions of the constitution and laws of that state, and of the decisions of the supreme court as to their construction. See Grund v. Tucker, 5 Kan. 70; Hentig v. James, 22 Kan. 326; Howell v. Manglesdorf, 33 Kan. 194, 5 Pac. 759; Abbey v. Dry-Goods Co., 44 Kan. 415, 24 Pac. 426. It is too late now to question the proposition that an action to enforce a liability thus created by, or existing under and by virtue of, the statute law of a state, is transitory in its nature, and may be maintained in the courts of another state, or (where diverse citizenship exists) in a federal court in another state, against a stockholder who resides there. Indeed, it is not understood that any question as to this proposition is made by the defendant's counsel. It is abundantly supported by the authority of many late cases, both state and federal. The supreme court of the United States, in Dennick v. Railroad Co., 103 U. S. 11, 18, by Mr. Justice Miller, states the doctrine thus clearly:

"Whenever, by either the common law or the statute law of a state, a right of action has become fixed, and a legal liability incurred, that liability may be enforced, and the right of action pursued, in any court which has jurisdiction of such matters, and can obtain jurisdiction of the parties."

See, also, Flash v. Conn, 109 U. S. 371, 3 Sup. Ct. 263; Railroad Co. v. Cox, 145 U. S. 593, 605, 12 Sup. Ct. 905; Railroad Co. v. Babcock, 154 U. S. 190, 197, 14 Sup. Ct. 978; Bank v. Rindge, 57 Fed. 279; McVikar v. Jones, 70 Fed. 754; Bank v. Whitman, 76 Fed. 697; Id., 28 C. C. A. 404, 83 Fed. 288; Rhodes v. Bank, 13 C. C. A. 612, 66 Fed. 512, 516; Mechanics' Sav. Bank v. Fidelity Insurance, Trust & Safe-Deposit Co., 87 Fed. 113; Dexter v. Edmands, 89 Fed. 467; Cook, Corp. § 223; Mor. Priv. Corp. § 872.

Unless, therefore, the statute of New Jersey of 1897, set out in the causes of demurrer above, presents a bar to the present action, it must be held that such an action at law for damages for a breach of the contract, under the provisions of the Kansas statute, lies against the defendant individually. The action being transitory, the plaintiff comes into the state of New Jersey clothed with its right to pursue the defendant for a breach of the contract, if she can be brought within the jurisdiction of the courts of that state, or, inasmuch as the citizenship is diverse, if she can be brought within the jurisdiction of the federal court in that state. The sole question, therefore, that remains to be determined upon this demurrer, is, does the said act of New Jersey of 1897 deprive this court of jurisdiction in this case? The defendant contends that it does, and the language of the statute, its scope and effect, must therefore be carefully considered. The statute has been above recited. It went into effect on the 30th day of March, 1897, and provided that no action or proceeding against a stockholder of a domestic or foreign corporation, by or on behalf of any creditor of such corporation, should be maintained in any court of law of that state, to enforce any statutory personal liability of such stockholder, if such liability be created by, or arise from, the statutes or laws of any other state or foreign country, and that "no pending or future action or proceeding to enforce any such statutory personal liability should be maintained in any court of this state, other than in the nature of an equitable accounting for the proportionate benefit of all parties interested, to which such corporation and all of its creditors and all of its stockholders shall be necessary parties." The jurisdiction of this court is concurrent with that of the courts of the state of New Jersey, and under the provisions of the judiciary act the law and jurisprudence of that state will be administered by it. It will not be held by this court in this case that a statute of the state, such as this, though binding upon a state court, would not be binding upon a federal court. If the statute just referred to, and relied upon by the defendant as a bar to the present action, were the only part of the law of New Jersey to be considered, it would then be necessary to determine whether, according to the contention of plaintiff's counsel, said statute was or was not within the scope of the prohibition of section 10 of article 1 of the constitution of the United States, forbidding any state to pass a law impairing the obligation of contracts. But our attention must also be directed to paragraph 3 of section 7 of article 4 of the constitution of New Jersey, which reads as follows:

"The legislature shall not pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made."

The statute in question did not go into effect until March 30, 1897, and the contract of this defendant, out of which her liability to the plaintiff arose, must be held to have been made as early as February, 1892. During all that interval between these dates the contract was a subsisting contract, and the liability for a breach of it capable of enforcement in an action at law in the common-law courts of New Jersey. Of this remedy, which undoubtedly existed when

the contract was made, the plaintiff was deprived by the statute of 1897. It is said by the defendant that this right of action existed only ex comitate. We do not think so, but, be that as it may, the remedy did exist. It will be observed that this provision of the constitution of New Jersey places upon the legislative department of the state a restraint expressed in language exactly similar to that of the contract clause of the constitution of the United States, and that it adds to that the express denial to the state legislature of the power to deprive a party of any remedy for enforcing a contract which existed when the contract was made. It may be quite true, as contended by counsel for defendant, that this latter clause was inserted by the framers of the state constitution in order to meet certain decisions of the supreme court of the United States which seemed to limit somewhat the scope of the contract clause of the constitution of the United States. In Bronson v. Kinzie, 1 How. 311, 316, the supreme court used this language:

"Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But, if that effect is produced, it is immaterial whether it is done by acting on the remedy, or directly upon the contract itself. In either case it is prohibited by the constitution."

Whether there is or is not anything inconsistent in this language with the later position taken by the supreme court in regard to this clause of the constitution, it remains true, nevertheless, that the framers of the constitution of New Jersey have seen fit, by express words, to protect beyond all cavil or doubt the remedy which existed at the time the contract was made, for enforcing the same. This the people of New Jersey had a right to do in their organic law, and impose upon their legislature what they thought an additional restraint to that imposed by the constitution of the United States. Though, under recent decisions of the supreme court, the contract clause of the constitution more efficiently protects the remedy than it was thought to do at the time the New Jersey constitution was framed, it may still be argued, in the language of the supreme court in Bronson v. Kinzie, that "whatever belongs merely to the remedy may be altered, according to the will of the state, provided the alteration does not impair the obligation of the contract." But no such contention as this can be made under the last clause of the New Jersey constitution just referred to. Here the inhibition of the state legislature is express and positive. It is forbidden to deprive a party of any remedy for enforcing a contract which existed when the contract was made. In view of this provision of the constitution of the state, it would not be competent for a court of New Jersey to declare that a statute of that state which deprived a party of such a remedy was operative because, in its opinion, such dealing with the remedy did not impair the obligation of the contract. If that be true in a state court, how can it be otherwise in this court, when admittedly administering the law and jurisprudence of that state?

The demurrant in this case invokes the law of 1897 as a bar to the present proceeding. But it is clear that, in considering the scope

and effect of this law, we must consider whether it is really efficient as a rule of action under the organic law of the state. If that organic law denies to the legislature power to make such an act efficient as a rule of action in a given case, then, as to such case, it is no law, and cannot be efficient as such, either in a state court or in this court. Under the doctrine, as already stated by the court, the plaintiff in this case comes into the state of New Jersey clothed with a right of action, complete in its nature, and, under well-established rules of international jurisprudence, justiceable in the courts, state and federal, having jurisdiction of the parties. The liability of the defendant who resides in the state, although created by the law of Kansas, is a contractual liability, and resulted from her voluntary act in entering into the contract which was embodied in her subscription to the stock of the Kansas corporation. The liability on the one hand, and the corresponding right of action on the other, are recognized and justiceable under general rules of jurisprudence, common to civilized countries, and so clearly stated by Mr. Justice Miller in Dennick v. Railroad Co. It may be admitted that this is only true subject to the proviso that the contract, though made pursuant to, and receiving its validity from, the law of a foreign state, shall not be repugnant to, or inconsistent with, the law or settled policy of the state in which it is sought to be enforced. According to the doctrine established by the cases, and the philosophy of the law, the contract between the plaintiff and the defendant exists in the state of New Jersey, and the liability for a breach of it also exists there, and is enforceable by the plaintiff whenever he may bring the defendant within the jurisdiction of the courts in that state. The contract and the liability under it have so existed since the time it was entered into,—certainly since, and as long as, the defendant has resided in New Jersey. The remedies for the enforcement of contracts that existed by the law of New Jersey at that time, and up to the law of 1897, were applicable to this contract as well as others, and were available, at any time within the period of legal limitation, to the plaintiff. If the effect of the law of 1897 is as contended for by defendant, then it has deprived the plaintiff of a remedy for enforcing his contract which existed when the contract was made. But this is the thing which the constitution of the state has forbidden the legislature to do, and, so far as the act assumes to do this, it is a nullity. To avoid this conclusion, however, counsel for defendant makes an able and ingenious argument. He says the law of 1897 is not opposed to the peculiar provision of the state constitution as to the deprivation of a remedy. "That clause," he says, "applies only to preserve the remedy upon those contracts whose obligation is protected from impairment by the preceding clause." And he quotes the language of Mr. Justice Dixon in Munday v. Rahway, 43 N. J. Law, 340, where he says:

"The juxtaposition of the last two clauses of this paragraph renders it highly probable, on settled rules of interpretation, that whatever contracts are guarded by the language concerning their obligation are referred to in the language concerning the remedy. No reason appears for an opposite conclusion."

He also quotes the late Chief Justice Beasley, in Rahway v. Munday, 44 N. J. Law, 415, where he says that this clause, in regard to the remedy in the state constitution—

"Has little force since the decision of the supreme court in the case of Louisiana v. New Orleans, 102 U. S. 203, where it is laid down broadly that the provision of the constitution of the United States securing the inviolability of the contract is, as a necessary consequence, protective of the remedy; such construction being justified from the consideration that the obligatory force of a contract, in the constitutional sense, resides in its legal enforceability, and that, when the contract is preserved from invasion, the means by which the parties to it can be compelled to observe its stipulations are likewise. Whether we, therefore, regard this provision as it exists in the constitution of the United States, or as it exists in this state, the same inquiry is presented, viz. whether this statute of 1880 deprives this defendant of a remedy which was in force at the time he entered into these engagements with the state."

But this only amounts to saying that the contract clause of the constitution of the United States protects the remedy, in the case with which the chief justice was dealing, as fully as the express words of the state constitution. If, however, we go further, as counsel for defendant is compelled to do, and say that the constitution of the United States only protects the obligation of contracts from hostile legislation of the states in which the contract is made, and it is the remedy of this class of contracts only which the constitution of the United States intended to protect, then, it seems to us, we read into that provision of the constitution words which its framers, ex industria, omitted, and which greatly narrow its scope and meaning. Two classes of contracts would thereby be created,—one within the protection granted, and the other without. For the doing of this, we have been referred to the authority of no decided case, and we have been able to find none. In Rader v. Township of Union, 44 N. J. Law, at page 260, Mr. Justice Dixon, in delivering the opinion of the supreme court of New Jersey, after referring to the case of Louisiana v. New Orleans, said:

"Thus, it appears that the constitutional obligation of a contract is not anything inherent directly in the contract itself, but is to be found in the law which governs it. There is nothing in the language of our organic laws suggestive of any distinctions among the obligations of contracts. All such obligations, as widely as they can be the subject of legislation, are referred to as though embraced in a single class. In the provision of our state constitution concerning remedies, only those existing when the contract was made are protected; but the clause regarding obligations is unlimited, and whatever may with propriety be termed the obligation of a contract is rendered inviolable."

We cannot, therefore, agree with the contention that either the learned chief justice or Mr. Justice Dixon intended to limit the scope of the first clause of the constitution of New Jersey, or that of the contract clause of the constitution of the United States, to contracts made in that state, and to confine the language in the last clause of the constitution of New Jersey, protecting the remedy, to the class thus defined. If the obligation of a contract may be said to "reside in its legal enforceability," then it would seem that the legislation of a state, though not the place of the contract, which destroys the right to the transitory action for its enforcement which previously existed, would impair its obligation, and so be within the inhibition

of the constitution of the United States, and also that of the state of New Jersey. If the contract here in question exists in the state of New Jersey, as we think we have shown that it does, and that the right of action accruing and the liability incurred by reason of it are cognizable before any court in that state having jurisdiction of the parties, then a law which impaired its obligation is as much in violation of the constitution of the United States as though the contract were made in the state of New Jersey. The constitution of the United States is not localized in this regard. It pervades all the states, like an atmosphere, and it withers and destroys all legislation inconsistent with its provisions. If it were otherwise, only a small portion of the contracts existing and enforceable in any state would be protected from adverse legislation of that state. The contract in question was lawfully made, and, as such, was binding upon the defendant, a party to it, in the state of New Jersey. Hundreds of such contracts, though not made in that state, are, on principles of universal jurisprudence, so binding in it; and the courts of that state, as those of the other states, are every day administering the law of such contracts, and enforcing their obligation. The rules of international law carry them, with their obligations, into the state where they are sought to be enforced. The efficiency of the whole lex mercatoria depends upon the recognition of this principle. Nor does its recognition at all diminish the force of the rule that the courts of a state are not bound to enforce contracts inconsistent with, or contrary to, a settled public policy of a state. This they are not bound to do, whether the contract in question be of domestic or foreign origin.

This brings us to say that we have discovered no public policy of the state of New Jersey that would forbid the enforcement of a contract like the one before us. It certainly, as Chief Justice Magie has said, is not contrary to good morals; nor can we regard the absence of legislation in New Jersey providing for the liability of stockholders prior to the act of 1897, after the manner of the Kansas law, as any evidence of that settled public policy which would stay the hand of the court in enforcing a contract of that kind. Nor do we think that the act of 1897, which forbids the maintenance of an action at law in behalf of an individual creditor against an individual stockholder, but apparently sanctions a proceeding in the nature of an accounting in equity, in which all the creditors of the foreign corporation and all its stockholders should be necessary parties, merely changes the form of the remedy theretofore existing, without destroying the substantial right of action which the plaintiff had for the enforcement of its contract. To use the language of Judge Lowell in Dexter v. Edmands, 89 Fed. 469:

"The difference between a right vested in all the creditors to proceed in one action against all the stockholders, and a right vested in each individual creditor to proceed against any individual stockholder, is much more than a difference between two remedies. It is a difference between two substantive rights."

But even if the inhibition of the constitution of the United States, and of that of New Jersey upon its legislature, to pass any law im-

pairing the obligation of contracts, be addressed only to the legislatures of the state where the contract was entered into, we are of opinion that the peculiar provision of the New Jersey constitution, prohibiting its legislature from depriving any party of a remedy to enforce his contract which existed when the contract was made, is not thereby limited and confined to contracts made in the state of New Jersey. We think that this provision was intended to extend the protection of the contract clause, and, by the exigence and force of its plain language, did extend that protection, under circumstances like those of the present case, to a contract, wherever made.

It is with much interest that we have read the opinion of the present chief justice of New Jersey in the case of Western National Bank v. Skilman, tried September 28, 1898, which, although not published, has been brought to our attention by the counsel for the plaintiff, from stenographic notes revised by the chief justice himself. This report we will take to be correct, as it is not challenged by the other side. It is true that the opinion was a nisi prius opinion on a motion for a nonsuit; but the fact that the plaintiff was the same plaintiff, and the cause of action precisely the same as in the present suit, seeking to enforce the liability in New Jersey of a stockholder of the same Kansas corporation, together with the high character and ability of the judge rendering the decision, give the opinion much weight in this court. Precisely the same questions were involved in the motion for a nonsuit that are made in the present case; the only difference, in fact, being that the New Jersey act of 1897 was passed after the suit had been begun. As to this point, the court cannot see that this at all affects the principle involved in the decision, which turned on the constitutionality of said act of 1897. The learned chief justice, in the conclusion of his opinion refusing the nonsuit, says:

"I think that this act both takes away the obligation of the contract, because it deprives the party of a mode of suing, which, under my construction, he had, and also, under the unusual clause connected with this part of our constitutional provision, it deprives a man of a remedy that he had when the contract was made."

This court feels much sustained by such an opinion from such a source, as, but for it, the case now before the court would be one of first impression. The first two grounds of demurrer having been covered by what has already been said, it only remains to say that the third ground of demurrer, namely, "that the undertakings and promises of the said defendant set forth in said counts, respectively, are, and each of them is, without consideration and void," cannot be sustained, for the reason that the contract which is declared upon and set up by the declaration rests upon the statutory liability created by the laws of Kansas, and no other consideration is necessary to support the promise declared upon. The demurrer must therefore be overruled, and let judgment be entered accordingly.